## LUNSFORD vs. COQUILLON.

APPEAL from the court of the third district.

MARTIN, J. delivered the opinion of the court. The plaintiff alleges she is a free woman and the defendant wrongfully detains her in slavery. The issue *libera vel non* has been found in her favour, and the plaintiff appealed.

If the owner of a slave remove her from Kentucky to Ohio, *animo morandi*, she becomes free, *ipso factu.*

VOL. II. (N. S.)   51

402

She does not pretend that she was born free, and it is admitted that, if she still be a slave, the defendant derives a title to her immediately from a person who was once her owner. But she alleges that some years ago, her then owner removed from Kentucky into Ohio, with the intention of residing there, taking her thither as a part of his family. That the constitution of Ohio provides, that " there shall be neither slavery nor involuntary servitude, in the state ;" that she resided for several years in this man's family, in Ohio, continuing to serve him as before—that, having made an attempt to assert her freedom, he defeated it by her forcible removal into Kentucky, from whence she was brought back into Ohio, and afterwards into Louisiana.

Her counsel urges that, as the constitution of Ohio does not allow slavery in the state, her emancipation or freedom was the inevitable and immediate consequence of the act of her former owner, in removing her (with the intention of residing,) in Ohio ; that, as she was a free woman there, she must be held so every where.

The relation of owner and slave is, in the states of this union, in which it has a legal ex-

istence, a creature of the municipal law. Al-
though, perhaps, in none of them a statute
introducing it as to the blacks can be produced,
it is believed that, in all : statutes were passed
for regulating and dissolving it. The issue of
a female slave is held to be born in the condi-
tion of the mother, the maxim of the Roman
law, *partus sequitur ventrem,* being universally
recognized. Indians taken captives in war,
have been declared slaves, and the absolute
property of the captor ; and a kind of tempo-
rary slavery has been made the doom of per-
sons of color guilty of certain breaches of the
law. 2 *Martin's revisal of N. C. Laws.* 2
*Martin's digest of the laws of Louisiana,* 102.
In most of the states recognizing slavery, laws
have been passed to authorise, regulate, or
check the emancipation of slaves. In some,
as in Pennsylvania, laws have been made to
abolish or modify slavery.

The right of a state to pass laws dissolving
the relation of master and servant, is recog-
nized in the constitution of the United States,
by a very forcible implication. This instru-
ment declares that no person held to service or
labour in one state, under the laws thereof,
escaping into another, shall, in consequence
of any law or regulation thereof, be discharged

East'nDistrict. *May*, 1824.

LUNSFORD
*vs.*
COQUILLON.

from such service or labour. Hence the implication is strong, that such persons, who do not escape, but whose owners voluntarily bring, may be discharged by the laws or regulations of the state, in which they are so brought. For if this could not be, to what use would be the prohibition?

The counsel for the plaintiff presuming that he has thus shewn the right of states to dissolve the relation of owner and slave, in other cases than the excepted one, contends that the state of Ohio having forbidden its existence, the relation is, *ipso facto*, dissolved, when owners of slaves, in other states, come with such slaves into Ohio, with the intention of residing there. The words, used by the framers of the constitution, being the most forcible ones to express the idea that *every one in the state should be free.*

It is urged that, if the relation of owner and slave, is a creature of the municipal law, in these states, and may be regulated, modified, and dissolved by it, it follows, that when dissolved, according to the law of the domicil of the owner and of the slave who lives with him, (if the slave can have a domicil other

than his owner's,) it must be considered every where, as having legally ceased to exist.

The converse of the proposition is certainly true. An Indian captive, reduced to slavery under the laws of North Carolina, and a colored man under those of Louisiana, would be considered as the property of the captor or purchaser, in every state in the union in which the lavery of Indians or negroes is allowed.

So slaves legally emancipated, according to the law of the domicil of the owner, would be be supported in the enjoyment of their freedom.

So the incipient right to freedom of the issue of a female slave, registered according to the laws of Pennsylvania, would prevail in Kentucky, notwithstanding her removal to the latter state.—*Bibb.*

Qualitates personales certo loco alicui jure impressas ubique circumferi et personam comitari, cum hoc effectu ut ubivis locorum, eo jure quo tales personæ alibi gauderint vel subjecti sunt fruentur et subjiciantur. *2 Huberus* 541, *de confl. legum.*

But the plaintiff's counsel says the constitution of Ohio did not, on her removal, *ipso facto* vest freedom on her, but conferred only

the right of procuring it to be decreed by the tribunals of that state.

That the provision, being a *penal* one, ought not to be enforced by the courts of other states.

That the acquisition of freedom by the plaintiff, or what is the same thing, the forfeiture of the owner's right, cannot be incidentally pronounced, and cannot be decreed, except by a judgment in a suit against him, whose right is to be destroyed.

Had the framers of the constitution of Ohio intended that slavery might exist in that state, in the persons who might be removed thither, until certain formalities should be complied with, they would have used different words. It would be idle for a court to decree that thereafter slavery cannot exist in A. B., when the constitution proclaims that it exists in no one, in the state.

The article of the constitution is not a penal one, and denounces no forfeiture.

Penalty and forfeiture essentially presuppose the omission of an act commanded, or the commission of one forbidden.

The article does neither command nor forbid any act, It warns owners of slaves in

other states, removing into Ohio, to sell or leave them behind, if they are not intended to be emancipated, and promises emancipation to all slaves brought in, or permitted to come in, on their master's entering the state with the view of fixing their domicil in Ohio.

A penalty or forfeiture cannot be decreed without a prosecution and conviction, and must ordinarily be sued for within a given period.

In almost every case of removal, the consequences of it are acknowledged and submitted to. How then is the new citizen of Ohio to be prosecuted, and of what is he to be convicted?

Should a citizen of a neighbouring state, where emancipation may be forbidden, restricted, or attended with expense, consent to allow a slave to go and enjoy his freedom in Ohio, is the grateful slave to arrest and prosecute his former owner, the first time he accidentally comes to Ciucinnati—and if he never come and as no forfeiture cannot be decreed without the defendant being brought in, or at least cited—will slavery, in spite of the constitution, exist in Ohio, until the former owner comes into that state, and be served with process?

East'n District.
*May*, 1824.

Lunseord
*vs.*
Coquillon.

If the freedom of the former slave be a forfeiture, which is to be decreed in an action, and the owner die before he is sued—so that the pretended offence die with him, will slavery exist for ever in Ohio?

We conclude that the constitution of the state Ohio emancipates, *ipso facto*, such slaves whose owners remove them into that state, with the intention of residing there—that the plaintiff having been voluntarily removed into that state, by her then owner, the latter submitted himself, with every member of his family, white and black, and every part of the property brought with him, to the operations of the constitution and laws of the state; and that, as according to them slavery could not exist in his house—slavery did not exist there, and the plaintiff was accordingly as effectually emancipated, by the operation of the constitution, as if by the act and deed of her former owner—that she could not be free in one state, and a slave in another; that her freedom was not impaired by his forcibly removing her into Kentucky to defeat her attempt to assert her freedom, nor by her subsequent removal, voluntary or forced, into this state.

This opinion is in conformity with that of

East'nDistrict.
*May*, 1824.

LUNSFORD
*vs.*
COQUILLON.

the court of appeals of Virginia. *Bibb.* 2 *Marshall*, 467.

It can work injury to no one—for the principle acts only on the willing, and *volenti non fit injuria.*

The plaintiff's counsel has laid great stress on the former owner of the plaintiff removing into Ohio, with the intention of settling, and it is this circumstance which governs the case. In the decision of the court of appeals of Kentucky, it is expressly said that slaves attending their masters sojourning in, or travelling to Ohio, are not thereby emancipated—as this point has no bearing on the present case, it is useless to consider it.

It is therefore ordered, adjudged and decreed, that the judgment be affirmed, with costs.

*Hennen* for the plaintiff, *Denis* for the defendant.